**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**SMARTIX INTERNATIONAL CORPORATION,**
**a.k.a. SMARTIX INTERNATIONAL, LLC,**

              **Plaintiff,**

       **- against -**

**GARRUBBO, ROMANKOW & CAPESE, P.C. AND**
**ANTHONY RINALDO,**

              **Defendants.**
────────────────────────────────

**06 Civ. 1501 (JGK)**

**MEMORANDUM OPINION AND**
**ORDER**

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Smartix International Corporation, a.k.a. Smartix International, LLC ("Smartix"), brings this action against the law firm Garrubbo, Romankow & Capese, P.C. ("Garrubbo") and attorney Anthony Rinaldo, Esq., a member of the firm, alleging four claims of legal malpractice and one claim of unjust enrichment against both defendants, and one claim of breach of fiduciary duty solely against Mr. Rinaldo.  The plaintiff bases its claims on the defendants' legal representation of the plaintiff between 2000 and 2004 in a variety of matters, including litigation against the plaintiff and contract negotiations between the plaintiff and MasterCard International Corporation ("Mastercard").  The defendants move for summary judgment with respect to each of the claims.

I

A

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.  The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial.  See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex, 477 U.S. at 322; Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing

Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998); Singh v. New York City Off-Track Betting Corp., No. 03 Civ. 5238, 2005 WL 1354038, at *1 (S.D.N.Y. June 8, 2005).


                                    B

        Jurisdiction in this action is based on diversity of citizenship and the parties agree that the law of New York provides the substantive law to be applied.  "In a diversity action based on attorney malpractice, state substantive law, here that of New York, applies.  To prevail on such a claim, [a plaintiff] must demonstrate that the attorney was negligent, that the negligence was a proximate cause of the injury and that [the plaintiff] suffered actual and ascertainable damages."  Rubens v. Mason, 527 F.3d 252, 254-55 (2d Cir. 2008) (internal quotation marks and citations omitted); see also Tydings v. Greenfield, Stein & Senior, LLP, 843 N.Y.S.2d 538, 540 (App. Div. 2007).  "Whether malpractice has been committed is ordinarily a factual determination to be made by the jury."  Greene v. Payne, Wood and Littlejohn, 602 N.Y.S.2d 883, 885 (App. Div. 1993).  "To succeed in a motion for summary judgment, the defendant in a legal malpractice action must present evidence in admissible form establishing that the plaintiff is

unable to prove at least one of these essential elements."
Lichtenstein v. Barenbaum, 803 N.Y.S.2d 916 (App. Div. 2005).

In a legal malpractice action, negligence is the failure to use the care, skill and diligence commonly possessed by a member of the legal profession.  Id.  "Expert testimony is normally needed to establish that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession, unless the ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service, or the attorney's conduct falls below any standard of due care."  Northrop v. Thorsen, 848 N.Y.S.2d 304, 308 (App. Div. 2007) (internal quotation marks, citations and emphasis omitted); see also Merlin Biomed Asset Management, LLC v. Wolf Block Schorr & Solis-Cohen LLP, 803 N.Y.S.2d 552, 553 (App. Div. 2005).  Both parties have produced expert witnesses in this matter.

"To establish proximate cause, the plaintiff must demonstrate that 'but for' the attorney's negligence, the plaintiff would have prevailed in the matter in question.  The failure to demonstrate proximate cause mandates the dismissal of a legal malpractice action regardless of whether the attorney was negligent."  Tydings, 843 N.Y.S.2d at 540 (internal quotation marks and citations omitted).

In order to satisfy the damages element of a legal malpractice claim, a plaintiff must demonstrate actual and ascertainable damages.  "Mere speculation of a loss resulting from an attorney's alleged omissions is insufficient to sustain a prima facie case sounding in legal malpractice."  <u>Luniewski v. Zeitlin</u>, 591 N.Y.S.2d 524, 526 (App. Div. 1992) (internal citation omitted).


II

The following facts are undisputed unless otherwise indicated.  At all relevant times, the plaintiff, a Delaware corporation located in New York, was in the business of developing, implementing and marketing a form of technology intended to facilitate ticketing and fan loyalty programs with respect to sports teams ("smartcard" and "magstripe card" technology).  Defendants Garrubbo and Rinaldo, a New Jersey law firm and an attorney at that firm licensed to practice law in New Jersey, respectively, provided legal services to the plaintiff during the relevant time period.  (Defendants' Joint Local Rule 56.1 Statement of Material Facts ("Defts.' 56.1 Stmt.") ¶¶ 1-5; Plaintiff's Response to Deft.'s 56.1 Stmt. and Plaintiff's Counter Statement of Material Facts ("Pl.'s 56.1 Stmt.") ¶¶ 1-5.)

Among other legal services, the defendants represented the plaintiff in litigation brought against it by Barbara Metzger and BJM Associates, LLC (the "Metzger litigation") in the New York State Supreme Court.  In the course of defending the Metzger litigation, which was eventually voluntarily dismissed through a joint stipulation, the defendants successfully moved for partial summary judgment, moved to compel certain discovery, and deposed the Metzger plaintiff and her husband, among other things.  (Defts.' 56.1 Stmt. ¶¶ 12-18; Pl.'s 56.1 Stmt. ¶¶ 12-18.; Declaration of Melinda Dus ("Dus Decl.") Ex. 7.)  According to the plaintiff, during the Metzger litigation the defendants billed the plaintiff for their preparation for and attendance at a sanctions hearing that resulted, at least in part, from Mr. Rinaldo's failure to attend a court-ordered mediation.  (Pl.'s 56.1 Stmt. ¶ 58; Dus Decl. Ex. 8A.)

In November 2003, the defendants advised the plaintiff in negotiating and drafting a licensing contract with MasterCard (the "MasterCard Agreement" or "Agreement").  The MasterCard Agreement was intended, among other things, to give the plaintiff and MasterCard joint ownership of certain intellectual property developed in relation to the Agreement.  (Defts.' 56.1 Stmt. ¶¶ 20-22; Pl.'s 56.1 Stmt. ¶¶ 20-22.)  The plaintiff asserts that the Agreement was poorly drafted, allowing

MasterCard to exploit it to the disadvantage of the plaintiff.
(Pl.'s 56.1 Stmt. ¶¶ 21-22.)

Also during the course of the defendants' legal
representation of the plaintiff, issues arose as to whether and
to what extent the plaintiff should pursue the protection of its
intellectual property.  The defendants, who did not specialize
in intellectual property matters, either retained or referred
the plaintiff to the law firm Lerner, David, Littenberg,
Krumholz & Mentilk LLP ("Lerner David") to assist in these
issues.  Lerner David provided the plaintiff with a report
discussing various avenues the plaintiff could pursue with
respect to protecting its intellectual property rights.  The
plaintiff's CEO at the time, William Henneberry, decided to
forego pursuing the avenues discussed in the Lerner David
report.  The defendants represent that they played no part in
Mr. Henneberry's decision.  The plaintiff alleges that Mr.
Henneberry lacked the authorization to act as CEO and to make
decisions on the plaintiff's behalf.  The plaintiff also
contends that it instructed the defendants to proceed with
obtaining intellectual property protections, and that the
defendants failed to do so.  (Defts.' 56.1 Stmt. ¶¶ 32-36; Pl.'s
56.1 Stmt. ¶¶ 32-36.)

According to the plaintiff, the defendants' legal
representation of the plaintiff also included direct involvement

in the corporate structuring and governance of the plaintiff. (Pl.'s 56.1 Stmt. ¶¶ 5, 38, 45.)  With respect to its corporate structuring and governance, the plaintiff represents, among other things, that corporate documents related to its capitalization were poorly maintained (Katz Dep. at 108 (attached as Dus Decl. Ex. 18)); that its bylaws were not followed and its board of directors was reduced to a nullity (Pl.'s 56.1 Stmt. ¶¶ 7; 70-72); and that Mr. Henneberry purported to act on its behalf without authorization (Pl.'s 56.1 Stmt. ¶ 7).  The defendants represent that they were not responsible for maintaining corporate documents.  (Defts.' 56.1 Stmt. ¶ 39)


                              III

     The plaintiff brings four causes of action against both defendants for legal malpractice, one cause of action against both defendants for unjust enrichment, and one cause of action against Mr. Rinaldo for the breach of fiduciary duty.  The defendants move for summary judgment with respect to each of the plaintiff's claims.  The Court addresses each claim in turn.


                               A

     The plaintiff's first legal malpractice claim is based on the defendants' representation of the plaintiff in the course of

the Metzger litigation.  The plaintiff alleges that it was billed for the defendants' attendance at a sanctions hearing resulting from Mr. Rinaldo's failure to attend a court-ordered mediation.  The defendants point out that both Metzger parties failed to attend the court-ordered mediation and that no sanctions were ultimately imposed.

The allegation regarding the sanctions hearing raises an issue of material fact with respect to the plaintiff's first legal malpractice claim.  The plaintiff has provided evidence that it was billed in connection with a sanctions hearing resulting in part from Mr. Rinaldo's failure to attend a court-ordered mediation.  (Dus Decl. Ex. 8A, Ex. 21 at 2/03/2003 entry.)  Although the expert witness proffered by the plaintiff, Daniel Abrams, Esq., did not opine in his expert report with respect to the standard of care applicable to following court orders (Abrams Report (attached as Dus Decl. Ex. 1)), the failure to follow direct orders from the court would fall below any standard of care.  Cf. Logalbo v. Plishkin, Rubano & Baum, 558 N.Y.S.2d 185, 187-88 (App. Div. 1990) (finding in the absence of expert testimony or expert report that attorney who disregarded "clearly defined and firmly imbedded" obligation failed to meet any permissible standard of due care).  Moreover, although the defendants point out that the trial judge in the Metzger litigation did not ultimately impose sanctions on the

defendants, they do not argue that this decision by the trial judge precludes a finding of legal malpractice against the defendants, and there is no reason that would be so.  Plainly claims for legal malpractice may exist even where attorneys have not been sanctioned for their conduct.

The defendants have failed to show that the plaintiff would not be able to establish proximate causation and actual, ascertainable damages at trial in connection with the sanctions hearing.  With respect to causation, the possibility that the sanctions hearing also resulted from the failure of attorneys who are not defendants in this case to attend the court-ordered mediation does not preclude the possibility of establishing proximate cause, because it is not necessary to demonstrate sole causation in order to demonstrate proximate or but-for causation.  See, e.g., Barnett v. Schwartz, 848 N.Y.S.2d 663, 668 (App. Div. 2007).  The plaintiff could establish at trial that Mr. Rinaldo failed to attend a court-ordered mediation session, that this failure to attend resulted in a sanctions hearing, and that the sanctions hearing resulted in legal fees that were paid by the plaintiff to the defendants.  With respect to damages, it is likely that the amount billed to the plaintiff in connection with the sanctions hearing may be ascertained without much difficulty.

Although the plaintiff has raised material issues of fact
with respect to its first legal malpractice claim on the basis
of evidence regarding the sanctions hearing, and the claim
should therefore not be dismissed, it should be noted that two
other bases advanced by the plaintiff to support its first legal
malpractice claim do not raise material issues of fact.

First, the plaintiff argues that the defendants unduly
delayed discovery in the Metzger litigation.  However, the
plaintiff points to no evidence of any discovery delay in its
Local Rule 56.1 Statement, and the citations to the record
provided by the plaintiff in its opposition papers to support
the proposition that the defendants "unnecessarily delayed the
resolution" of the Metzger litigation provide no such support.
(See Huber Dep. at 179 (attached as Dus Decl. Ex. 16) (merely
stating that Metzger litigation was "longstanding" and
"onerous"); Katz Dep. at 98 (merely reciting allegations made in
the Complaint).)  The most the evidence shows, in the form of
dates attached to billing entries, is that the defendants waited
for over a year to provide at least one discovery response or
document production in the Metzger litigation.  (Dus Decl. Ex.
21 at 8/21/2002 billing entry.)  However, the plaintiff points
to no expert testimony setting forth the standard timing for
discovery practice, and Mr. Abrams does not mention any
discovery delays in his report.  (See Abrams Report.)  The

timing and nature of discovery practice is plainly not within the ordinary experience of a fact-finder, and in the absence of any showing by the defendants as to the nature of discovery in the Metzger litigation, the reasons for any delays and the justifications for any delays, the dates on billing entries for discovery do not provide a basis to find that the defendants failed to meet any permissible standard of care in their conduct during discovery.

In any event, the plaintiff's claim for damages in connection with any alleged delay in discovery is speculative, because the plaintiff provides no support for its assertion that the Metzger litigation could have been resolved at an earlier time, nor its assertion that investors were deterred by the ongoing litigation; the plaintiff's citations to the record (Katz Dep. at 44-45; Dus Decl. Ex. 46) only indicate that investors were aware of the litigation. Cf. Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 396 (S.D.N.Y. 2000) ("Plaintiff's allegation that he would have recovered more if the underlying action had gone to trial or if his lawyers had not confined themselves to settlement within the limits of the relevant insurance coverage does not demonstrate the 'actual and ascertainable' damages necessary for a malpractice claim."). Therefore, the plaintiff's allegation of discovery delays in the

Metzger litigation does not raise material issues of fact with respect to legal malpractice.

Second, the plaintiff claims that Mr. Rinaldo appeared on its behalf in New York State Supreme Court without being admitted to practice law in New York.  There is no reason to believe that such appearances, if true, constituted legal malpractice.  Mr. Abrams opined that appearing without admission was in violation of a disciplinary rule.  (Abrams Report at 6.) However, the violation of a disciplinary rule does not, in itself, give rise to a cause of action for legal malpractice. See, e.g., Condren v. Grace, 783 F. Supp. 178, 187 (S.D.N.Y. 1992).  All of the elements of a legal malpractice claim must be satisfied irrespective of whether a disciplinary rule has been violated.  Id.  In this case, the plaintiff has not explained how it was damaged by Mr. Rinaldo's alleged unauthorized appearances.  There is no evidence that it suffered any costs in connection with such appearances, that any sanctions were imposed or even sought, or that Mr. Rinaldo committed any missteps in the Metzger litigation because he was not admitted to practice law in New York.  Mr. Abrams' opinion in this respect is speculative on its face: "The [unadmitted] out-of-state attorney will likely be ignorant of important court procedures.  This ignorance may have manifested itself in the apparent failure to . . . appear at a court-ordered mediation .

14

. . ." (Abrams Report at 6-7.) Therefore, the possible appearance by Mr. Rinaldo in the Metzger litigation without admission to practice law in New York does not create an issue of material fact with respect to legal malpractice.

For the foregoing reasons, summary judgment is unwarranted with respect to the plaintiff's first legal malpractice claim, because there are issues of fact with respect to the sanctions hearing relating to the failure to appear for a court-ordered mediation.


B

The plaintiff's second legal malpractice claim is based on the defendants' involvement in negotiating and drafting the MasterCard Agreement. The plaintiff argues that the MasterCard Agreement was so poorly drafted that MasterCard was able to "abscond with" intellectual property belonging to the plaintiff. Put another way, the plaintiff ascribes responsibility to the defendants for a poorly negotiated and drafted contract that MasterCard was able to exploit to the disadvantage of the plaintiff. The plaintiff further argues that the defendants failed sufficiently to advise the plaintiff with respect to protecting its intellectual property prior to the execution of the MasterCard Agreement.

The defendants contend that the MasterCard Agreement adequately protected the plaintiff's interests and that whatever rights the plaintiff surrendered through the Agreement did not constitute malpractice.  The defendants further argue that there is no evidence that MasterCard took advantage of the plaintiff, and that in any event the plaintiff could not prove at trial that problems with the MasterCard Agreement or the defendants' advice regarding the Agreement proximately caused any actual and ascertainable damages to the plaintiff.

It should be noted at the outset that the parties in this case are not seeking an adjudication of the meaning of the MasterCard Agreement.  Rather, the disputed issue is whether the defendants, in providing legal services with respect to the MasterCard Agreement, committed legal malpractice by failing to advise the plaintiff properly in negotiating and drafting a contract that left the plaintiff vulnerable to being exploited by MasterCard.  This is not a contract dispute raising a question of whether a contract is ambiguous as a matter of law with respect to its meaning, which would be a question of law for the Court.  Cf. Compagnie Financiere v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 232 F.3d 153, 157-58 (2d Cir. 2000).

The plaintiff has produced evidence in the form of deposition testimony that the MasterCard Agreement was drafted

to the disadvantage of the plaintiff and contained certain vagaries that MasterCard was able to exploit at the expense of the plaintiff.  (Katz Dep. at 47-49 ("[The Agreement] was very vague . . . . It did not protect Smartix from MasterCard's efforts to secure use of the software outside the contract."), 101 ("The MasterCard Agreement was vague enough so that MasterCard felt that they would roll the dice and try to do these businesses without us, which they subsequently did . . . ."); Huber Dep. at 72 ("It sounds as if MasterCard can do pretty much anything they want with this in one part of the contract . . . . There's also penalty clauses in here that would cause Smartix enormous damages if they wanted to market this outside of MasterCard . . . .").)

The defendants have failed to show that there is no genuine issue of material fact with respect to whether the MasterCard Agreement was poorly drafted from the plaintiff's perspective, and that MasterCard exploited its advantage.  The defendants argue that their advice improved the plaintiff's position in connection with the Agreement.  (Declaration of Susan Paek ("Paek Decl.") Ex. K at 9.)  Even accepting this argument, it proves only that the defendants functioned better than no counsel at all; it does not prove that the defendants met the appropriate standard of care.  Indeed, the plaintiff's expert, Mr. Abrams, opined that the defendants violated their standard

of care by failing to advise the plaintiff in the "big picture" sense with respect to what rights the Agreement would and should give to MasterCard.  (Abrams Report at 11.)  The defendants do not contend that they advised the plaintiff in this regard, and there is evidence that they did not.  (Katz Aff. ¶ 13.)

The plaintiff has also raised issues of material fact with respect to whether the alleged inadequacy of the defendants' legal services in connection with the MasterCard Agreement proximately caused actual and ascertainable damages to the plaintiff.  Among other things, the plaintiff has provided undisputed evidence that it is currently engaged in litigation with MasterCard in which it alleges that MasterCard stole its intellectual property (the "MasterCard litigation").  (Dus Decl. Ex. 30.)  The Amended Complaint in the MasterCard litigation contains a lengthy discussion of the MasterCard Agreement (Dus Decl. Ex. 30 at ¶¶ 13 et seq.), and the defendants have not shown at this stage that the plaintiff would not be able to prove at trial that the MasterCard litigation would not have come about but for the alleged poor drafting of the MasterCard Agreement.  The defendants have not argued that the costs of the MasterCard litigation would not be ascertainable.

For the foregoing reasons, the plaintiff has met its burden at the summary judgment stage of establishing an issue of material fact with respect to whether the defendants' legal

services in connection with the MasterCard Agreement constituted legal malpractice, and summary judgment is unwarranted on the plaintiff's second legal malpractice claim.


                                    C

    The plaintiff's third legal malpractice claim alleges that the defendants failed properly to advise the plaintiff with respect to protecting its intellectual property.  The defendants contend that they fulfilled this responsibility by engaging the services of an intellectual property firm, Lerner David, and that in any event, Mr. Henneberry instructed the defendants not to pursue intellectual property protection.

    The plaintiff has raised material issues of fact in connection with its third legal malpractice claim.  In his expert report in this case, Mr. Abrams opined that the standard of care applicable to the defendants required them to advise the plaintiff with respect to pursuing intellectual property protection and to ensure that any decision made by the plaintiff in this respect was made by the plaintiff as a corporation, rather than by a single individual.  (Abrams Report at 10.)  The plaintiff has offered evidence that there are issues of fact as to whether the defendants met this standard.  In particular, the plaintiff has offered evidence that the plaintiff requested the defendants to pursue intellectual property protection, but that

the defendants did not do so.  (Pl.'s 56.1 Stmt. ¶ 36.)  The

defendants' argument that Mr. Henneberry instructed them not to

pursue such protections is unavailing because there are issues

of fact as to whether Mr. Henneberry was authorized to abandon

the corporation's intellectual property.  (See Abrams Report at

10 ("Given the testimony I have reviewed and the acrimonious

relationship between the principals of Smartix, it would appear

that this decision [not to secure intellectual property

protection] was made by one or two of the principals, and

certainly not joined in by [other Smartix executives].  The

decision to essentially abandon Smartix's intellectual property

pursuits could not be made by an individual . . . .").)  The

defendants' argument that Lerner David was wholly responsible

for advising the plaintiff in connection with intellectual

property protection is also unavailing because there are issues

of fact with respect to what role, if any, the defendants

continued to play in connection with decisions concerning

intellectual property protection even after Lerner David was

retained.  (Pl.'s 56.1 Stmt. ¶¶ 32-33.)  In addition, the

plaintiff has raised issues of fact with respect to whether the

defendants failed to consult with an intellectual property firm

prior to providing legal services in connection with the

MasterCard Agreement (Connors Dep. at 85 (attached as Dus Decl.

Ex. 4)) and whether they should have done so (Abrams Report at 11).

There are also issues of fact with respect to causation and damages in connection with the plaintiff's third legal malpractice claim.  It is plausible that the plaintiff would be able to prove at trial that but for the defendants' failure to secure protection for the plaintiff's intellectual property, the plaintiff would have been protected from the alleged exploitation by MasterCard.  With respect to damages, the defendants do not rebut the plaintiff's argument that if the defendants were indeed negligent in failing to obtain intellectual property protection, the legal fees incurred by the plaintiff in attempting to obtain such protection, which the defendants failed to obtain, would constitute actual, ascertainable damages.[1]

For the foregoing reasons, summary judgment is not warranted with respect to the plaintiff's third legal malpractice claim.

---

[1]    The defendants' argument that the plaintiff has not shown that it could have secured intellectual property protection, while presented as an argument about damages (Defendants' Reply Brief at 9), really addresses whether the defendants' failure to pursue such protection was negligent, as to which the plaintiff has raised issues of fact.  The defendants do not dispute that the plaintiff incurred legal fees in attempting to obtain intellectual property protection.

D

In the plaintiff's fourth legal malpractice claim, the plaintiff alleges that the defendants bear responsibility for fundamental flaws in the plaintiff's corporate structure and governance.  The defendants nowhere deny that such flaws existed, but they deny responsibility for them.

The plaintiff has raised issues of fact with respect to its fourth malpractice claim.  The plaintiff has produced evidence of problems in its corporate structure and governance by providing factual support for its assertions that, among other things, corporate documents related to its capitalization were poorly maintained (Katz Dep. at 108); its bylaws were not followed and its board of directors was reduced to a nullity (Pl.'s 56.1 Stmt. ¶¶ 7; 70-72); and Mr. Henneberry purported to act on its behalf without authorization, and was not prevented from doing so by the defendants (Pl.'s 56.1 Stmt. ¶ 7).  The plaintiff has also produced evidence that advising the plaintiff with respect to its corporate structure and governance fell within the scope of the defendants' legal services.  (Henneberry Dep. 51 (attached as Dus Decl. Ex. 36) ("[Mr. Rinaldo] helped us with corporate governance issues"); Katz Aff. ¶ 4 ("[Mr. Rinaldo] was essentially Smartix's 'in-house' counsel catering to all of Smartix's legal requirements"), ¶ 6 ("Smartix explained its business and outlined its needs for legal

representation, including . . . its entity structure"); Rinaldo
Dep. at 42 (attached as Dus Decl. Ex. 11) (indicating there were
no defined limits to the defendants' legal representation of the
plaintiff).)  The plaintiff elicited testimony from one of the
expert witnesses offered by the defendants, Patrick Connors,
that the standard of care ascribable to an attorney the scope of
whose legal representation included advising on corporate
structuring and governance issues would require the attorney to
take action if he or she was made aware of problems in those
areas.  (See, e.g., Connors Dep. at 109, 133-34.)  The plaintiff
has pointed to evidence that the defendants were made aware of
problems regarding corporate structure and governance (Dus Decl.
Ex. 39), and in any event a fact-finder could infer such
awareness from the evidence that the defendants were involved in
the structuring and governance of the company.

     The defendants have failed to show that the plaintiff could
not prove at trial that its allegedly ramshackle corporate
structure and loose corporate governance caused actual and
ascertainable damages.  The plaintiff has offered evidence that
certain investors were deterred from investing in the plaintiff
because of its structure and governance problems.  (See, e.g.,
Brad Berkowitz Aff. ¶ 5; Jeffrey Berkowitz Aff. ¶ 5.)  Moreover,
it is plausible that actual and ascertainable damages could be
established at trial based on the amount of money, if any, that

would have been invested in the plaintiff but for the
defendants' failure to address the alleged structural and
governance problems.

For the foregoing reasons, summary judgment with respect to
the plaintiff's fourth legal malpractice claim is unwarranted.


E

The plaintiff brings a claim for unjust enrichment against
the defendants on the basis of alleged over-billing.  The
elements for a claim of unjust enrichment under New York law
are: (1) that the defendant was enriched; (2) the enrichment was
at the plaintiff's expense; and (3) the circumstances were such
that equity and good conscience require the defendants to make
restitution.  See, e.g., Golden Pac. Bancorp v. Fed. Deposit
Ins. Corp., 273 F.3d 509, 519 (2d Cir. 2001).

In connection with its unjust enrichment claim, the
plaintiff asserts, among other things, that the defendants
inflated their bills without justification.  The plaintiff
produces evidence raising issues of fact with respect to whether
bills were inflated without justification.  (See, e.g., Dus
Decl. Ex. 42 at 10/3/2000 and 10/11/2000 entries.)  The
defendants do not respond substantively to the plaintiff's
unjust enrichment claim, arguing only that the unjust enrichment
claim should be dismissed as duplicative of the plaintiff's

legal malpractice claims.  <u>See, e.g.</u>, <u>Town of Wallkill v.</u>
<u>Rosenstein</u>, 837 N.Y.S.2d 212, 215 (App. Div. 2007) (holding that
claims for unjust enrichment and breach of fiduciary duty, among
other claims, should be dismissed because "[t]hey were merely
duplicative of the legal malpractice cause of action, as they
arose from the same facts and did not allege distinct and
different damages").  This argument is without merit, because
the unjust enrichment claim is not duplicative of any of the
legal malpractice claims.  The unjust enrichment claim alleges
that the defendants inflated their legal bills.  The legal
malpractice claims allege errors in judgment and performance by
the defendants with respect to the legal services they provided
to the plaintiff.  Plainly these are different claims relying on
different facts.

     Therefore, summary judgment with respect to the plaintiff's
claim for unjust enrichment is unwarranted.


                                  F

     Finally, the plaintiff brings a claim solely against Mr.
Rinaldo for breach of fiduciary duty.  The gist of the claim is
that Mr. Rinaldo breached his fiduciary duty to the plaintiff as
a member of the board of directors by cooperating in violations
of the corporate bylaws and by failing to prevent Mr. Henneberry
from commandeering control of the company without proper

authorization.  As with the unjust enrichment claim, the
defendants decline to respond substantively to the plaintiff's
breach of fiduciary duty claim, arguing only that the claim
should be dismissed as duplicative of the plaintiff's legal
malpractice claims.

"Under New York law, where a claim for fiduciary duty is
premised on the same facts and seeking the identical relief as a
claim for legal malpractice, the claim for fiduciary duty is
redundant and should be dismissed."  Nordwind v. Rowland, No. 04
Civ. 9725, 2007 WL 2962350, at *4 (S.D.N.Y. Oct. 10, 2007)
(quoting Weil, Gotshal & Manges, LLP v. Fashion Boutique of
Short Hills, Inc., 780 N.Y.S.2d 593, 596 (App. Div. 2004)).
Although there is significant overlap between the plaintiff's
breach of fiduciary duty claim and its fourth legal malpractice
claim, the two claims are not duplicative.  The breach of
fiduciary duty claim turns on Mr. Rinaldo's membership on the
plaintiff's board of directors and the fiduciary duty he owed
the plaintiff in that capacity; by contrast, the fourth legal
malpractice claim turns on alleged shortcomings in the legal
services provided to the plaintiff.  The breach of fiduciary
duty claim in this case is not based on the fiduciary duty
attorneys owe to their clients, as is typical in actions
alleging both legal malpractice and breach of fiduciary duty
against an attorney.  See, e.g., Ulico Casualty Co. v. Wilson,

Elser, Moskowitz, Edelman & Dicker, 865 N.Y.S.2d 14, 20-21 (App.
Div. 2008) ("Because the attorney-client relationship is both
contractual and inherently fiduciary, a complaint seeking
damages alleged to have been sustained by a plaintiff in the
course of such a relationship will often advance one or more
causes of action based upon the attorney's breach of some
contractual or fiduciary duty owed to the client.  The courts
normally treat the action as one for legal malpractice only.")
(collecting cases).  Moreover, the damages sought by the
plaintiff in its breach of fiduciary duty claim, which include
checks allegedly paid to Mr. Rinaldo personally, are not
identical to the damages it seeks under the fourth malpractice
claim.

Therefore, summary judgment is unwarranted with respect to
the plaintiff's claim for breach of fiduciary duty.


CONCLUSION

For all of the foregoing reasons, the defendants' motion
for summary judgment is **denied**.  The Clerk is directed to close
Docket No. 43.

SO ORDERED.

Dated:   New York, New York
         March 30, 2009

John G. Koeltl
United States District Judge

27